UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re:

GOOD MORNING TO YOU
PRODUCTIONS CORP.; ROBERT
SIEGEL; RUPA MARYA; and
MAJAR PRODUCTIONS, LLC,
On Behalf of Themselves and All
Others Similarly Situated,

          Plaintiffs,

v.

WARNER/CHAPPELL MUSIC, INC.; and
SUMMY-BIRCHARD, INC..,

          Defendants.

Case No. 1:14-mc-00179-P1

Subpoena issued in
CASE NO: 2:13-cv-04460-GHK-MRW
(United States District Court for the
Central District of California)

---

## DECLARATION OF MARK C. RIFKIN IN OPPOSITION TO MOTION TO QUASH PLAINTIFFS' RULE 45 SUBPOENA SERVED ON NON-PARTY AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

Mark C. Rifkin, Esquire, hereby declares and states as follows:

1. I am an attorney duly licensed to practice law in the state of New York and am admitted to practice in the United States District Court for the Southern District of New York. I am a partner at the law firm Wolf Haldenstein Adler Freeman & Herz LLP, Interim Lead Counsel for the Plaintiffs in this litigation. I have personal knowledge of the matters set forth herein and, if called upon, I could and would competently testify thereto.

2. On March 28, 2014, Plaintiffs caused a subpoena to be served upon non-party ASCAP seeking documents relevant to Plaintiffs' claims in the matter captioned *Good Morning to You Productions Corp., et al. v. Warner/Chappell Music, Inc. et al.*, No. 2:13-cv-04460-GHK-

MRW (C.D. Cal.), pending in the Central District of California, Western Division (the "California Action").

3.  In the California Action, the Plaintiffs, artists who were unlawfully charged fees to perform the song *Happy Birthday to You* ("Happy Birthday" or the "Song") or use it in their documentary films or movies, seek to determine the disputed copyright ownership of the Song. A true and correct copy of Plaintiffs Fourth Amended Complaint ("FAC") in the California Action is attached hereto as Exhibit A.

4.  As alleged in the FAC, historical evidence establishes that Warner/Chappell Music, Inc. ("Warner/Chappell"), a defendant in the California Action, does not own any copyright to the Song and, despite that fact, has been charging and collecting undeserved license fees and royalties for use of the Song for at least 25 years. Even though the Song has been performed since around the turn of the 20th Century, no court has ever determined the disputed ownership of the claimed copyright.

5.  ASCAP objected to the document subpoena but did not seek to quash it.

6.  On April 22, 2014, one of my co-counsel in the California Action, Randall S. Newman, Esquire, and I spoke by telephone with Richard H. Reimer, Esquire, ASCAP's Senior Vice President – Legal Services, regarding the document subpoena. During that call, Mr. Reimer informed us that ASCAP would produce documents in response to the subpoena.

7.  Shortly thereafter, Mr. Reimer and I again spoke by telephone, at which time Mr. Reimer told me that ASCAP was sending the documents to Plaintiffs. During that call, Mr. Reimer also told me that ASCAP was producing two documents in particular that provided a detailed analysis of the disputed ownership of the copyright that Plaintiffs would find very interesting. He did not identify those documents any other way.

2

8. On May 9, 2014, I received approximately 500 pages of ASCAP documents from Mr. Reimer. All of the documents were marked "Confidential" by ASCAP pursuant to a stipulated protective order in the California Action approved by the Central District of California on May 5, 2014.

9. As Mr. Reimer previously told me, the documents produced by ASCAP included two letters from Richard Wincor, Esquire, of Coudert Brothers to David K, Sengstack, President of Summy-Birchard Co. (Warner/Chappell's predecessor-in-interest) (the "Coudert Letters"), that provided a detailed discussion of the disputed copyright ownership. ASCAP marked the Coudert Letters as "Confidential" in the California Action and I am presently sequestering them.

10. Although Mr. Reimer did not identify the Coudert Letters, I recognized them as the documents to which he referred in our second phone call. I understood from Mr. Reimer's comments and ASCAP's production of the Coudert Letters that: (a) ASCAP intended to produce the Coudert Letters to Plaintiffs; (b) ASCAP did not regard them as privileged or confidential; and (iii) ASCAP wanted to be sure that Plaintiffs saw the Coudert Letters.

11. ASCAP has since stated in its motion to quash that it does not assert any privilege regarding the Coudert Letters or any of the other documents that defendants in the California Action claim are privileged.

12. Arlene M. Sengstack, then Vice President of Summy-Birchard Co., sent copies of the Coudert Letters to Bernie Korman of ASCAP, on October 17, 1979, more than one year after the first letter and more than three years after the second letter were written. ASCAP has marked Ms. Sengstack's letter forwarding the Coudert Letters to Mr. Korman as "Confidential" in the California Action and I am presently sequestering it.

13. On May 16, 2014, Mr. Newman and I again spoke by telephone with Mr. Reimer

3

to ask ASCAP to withdraw the "Confidential" designation for two of the documents. Although I did not mention the Coudert Letters at first, Mr. Reimer asked if I was referring to them, which I confirmed.

14. Mr. Reimer told Mr. Newman and me that he would not oppose withdrawing the "Confidential" designation, but only if Plaintiffs intended to use the Coudert Letters only in connection with the California Action and not seek to publish the letters outside the litigation. Mr. Newman and I confirmed that Plaintiffs would not seek to publish the letters outside the litigation, but I reminded Mr. Reimer that the California Action had received worldwide media coverage and that any public filing might be reported by the media. Mr. Reimer said he was not concerned about any media attention that a filing in the litigation might attract.

15. At the end of the call, Mr. Reimer told Mr. Newman and me that he would need to speak with others before agreeing to the request, but that he would not oppose withdrawing the "Confidential" designation.

16. On May 22, 2014, Mr. Reimer sent me a letter in which he asserted that certain of the documents ASCAP produced to Plaintiffs "are subject to a claim of attorney-client or attorney work produce privilege, and therefore were inadvertently produced." A true and correct copy of Mr. Reimer's May 22, 2014, letter is attached hereto as Exhibit B.

17. In that letter, Mr. Reimer also stated that "counsel for the defendants" in the California Action would be contacting me directly "to provide the details as to the basis for their clients' claim of privilege."

18. I understood from Mr. Reimer's letter that the privilege was being claimed only by the defendants in the California Action, not by ASCAP.

19. Despite defendants' claim of privilege, none of the ASCAP documents, including

the Coudert Letters, appeared on the privilege log produced by the defendants in the California Action on May 9, 2014, nor on the defendants' amended privilege log produced on June 2, 2014. True and correct copies of defendants' privilege log and amended privilege log are attached hereto as Exhibits C and D, respectively.

20. After I received Mr. Reimer's May 22, 2014, letter, I exchanged correspondence and spoke by telephone with Kelly M. Klaus, Esquire, counsel for the defendants in the California Action, regarding the defendants' claim of privilege.

21. In light of the factual issues raised by the claim of privilege by the defendants in the California Action, Plaintiffs issued a deposition subpoena to ASCAP, pursuant to Federal Rules of Civil Procedure ("Rule(s)") 45 and 30(b)(6), for the deposition of its representative(s) most knowledgeable about the circumstances surrounding ASCAP's receipt of the Coudert Letters in 1979 and its production of those letters to Plaintiffs in 2014 (the "Subpoena"). A true and correct copy of the deposition subpoena served on June 4, 2014 (henceforth, the "Subpoena"), is attached hereto as Exhibit E.

22. Plaintiffs attempted to have the Subpoena served on ASCAP on June 2, 2014. ASCAP did not accept service of the Subpoena on that date. The Subpoena was served on ASCAP on June 4, 2014.

23. On June 4, 2014, an associate of my firm, Beth A. Landes, Esquire, sent an email to Mr. Reimer offering to re-schedule the deposition for any date and time convenient for ASCAP's representative(s). A true and correct copy of the email from Ms. Landes to Mr. Reimer is attached hereto as Exhibit F. Mr. Reimer did not respond with any alternative dates or times for the deposition.


24. That same day – and prior to the time Ms. Landes emailed Mr. Reimer – I received an email from Mr. Reimer asking Plaintiffs to excuse ASCAP from the requirement of a formal response to the Subpoena and to adjourn the deposition until the discovery disputes raised by defendants in the California Action are resolved. A true and correct copy of Mr. Reimer's email to me is attached hereto as Exhibit G.

25. Plaintiffs could not agree to ASCAP's request to adjourn the deposition until such time as the parties in the California Action resolve defendants' privilege claims because Plaintiffs faced a June 27, 2014, discovery cut-off date in that litigation and because some of the information Plaintiffs seek is relevant to the claim of privilege.

26. At the time the Subpoena was served on ASCAP, fact discovery in the California Action was set to end on June 27, 2014. On June 9, 2014, the fact-discovery deadline in the California Action was extended to July 11, 2014.

27. Plaintiffs also seek the deposition of the ASCAP representative(s) most knowledgeable on two additional topics directly relevant to the merits of their underlying claim: (a) the scope or validity of any copyright to the Song; and (b) the distribution of any fees or royalties ASCAP collects and has collected for the Song. In light of the upcoming fact discovery deadline in the California Action, Plaintiffs must be permitted to proceed with that discovery without delay, regardless of the outcome of the privilege dispute, or risk substantial prejudice to their rights.

28. On June 3, 2014, Plaintiffs took the deposition of Warner/Chappell, by representative designated by it under Rule 30(b)(6) as the person most knowledgeable on the merits issues in the California Action. The designee, Thomas Marcotullio, testified repeatedly that Warner/Chappell did not possess any relevant factual information other than what was stated

in the few documents it has relating to the Song. Defendants in the California Action have designated the entire deposition transcript as "Confidential" pursuant to the stipulated protective order approved by the Central District of California on May 5, 2014.

29. On June 12, 2014, I spoke by telephone with Darren W. Johnson, Esquire, ASCAP's counsel in this action. During the call, I offered to withdraw the Subpoena on the substantive issues if and to the extent ASCAP produced a sworn statement setting forth the topics from the Subpoena on which ASCAP has no representative with any knowledge.

30. On June 16, 2014, I sent an email to Mr. Johnson again asking if ASCAP would produce the sworn statement I requested during the phone call with Mr. Johnson. A true and correct copy of my email to Mr. Johnson is attached hereto as Exhibit H.

31. ASCAP has not produced any sworn statement setting forth the topics from the deposition subpoena on which it has no representative with any knowledge.

32. I hereby declare under the penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Executed this 19th day of June, 2014, at New York, New York.

/s/ Mark C. Rifkin
MARK C. RIFKIN