# EXHIBIT E

Page 1

1   UNITED STATES DISTRICT COURT

    CENTRAL DISTRICT OF CALIFORNIA

2   WESTERN DIVISION

    -------------------------------------------X

3   GOOD MORNING TO YOU PRODUCTIONS CORP,

    et al.

4                              Plaintiffs,

5        -against-

6   WARNER/CHAPPELL MUSIC INC., et al.,

7                              Defendants.

    -------------------------------------------X

8   Lead Case No. CV 13-04460-GHK (MRWx)

9

10                      DATE:  July 11, 2014

                        TIME:  2:00 p.m.

11

12        VIDEOTAPED DEPOSITION of Richard

13  Reimer, taken by Plaintiffs, held at the

14  Offices of Paul, Weiss, Rifkind, Wharton &

15  Garrison, LLP, 1285 Avenue of the Americas,

16  New York, New York 10019, before Gilbert J.

17  Bowles, a Notary Public of the State of New

18  York.

19

20

21

22

23    Job No: 81987

24

25

1   A P P E A R A N C E S:

2

3   WOLF HALDENSTEIN ADLER FREEMAN & HERZ
          Attorneys for the Plaintiffs
4         270 Madison Avenue
          New York, NY 10016
5         BY: MARK C. RIFKIN, ESQ.

6

    MUNGER TOLLES & OLSON
7         355 South Grand Avenue
          Los Angeles, CA 90071
8         BY: MELINDA EADES LeMOINE, ESQ.

9

10

    PAUL, WEISS, RIFKIND, WHARTON & GARRISON
11        1285 Avenue of the Americas
          New York, NY 10019
12        BY: DARREN W. JOHNSON, ESQ.

13

14

15  ALSO PRESENT:   STEVE SANPIETRO
                    Legal Video Specialist
16

17                  RANDALL S. NEWMAN, ESQ.

18        *          *          *

19

20

21

22

23

24

25

1                S T I P U L A T I O N S

2

3    IT IS HEREBY STIPULATED AND AGREED, by and between

4        the attorneys for the respective parties herein,

5        that filing and sealing be and the same are

6        hereby waived.

7    IT IS FURTHER STIPULATED AND AGREED that all

8        objections, except as to the form of the

9        question, shall be reserved to the time of the

10       trial.

11   IT IS FURTHER STIPULATED AND AGREED that the within

12       deposition may be sworn to and signed before any

13       officer authorized to administer an oath, with

14       the same force and effect as if signed and sworn

15       to before the Court.

16

17

18

19

20

21

22

23

24

25

1      THE VIDEOGRAPHER:  This is the

2  start of the tape labeled Number 1 of

3  the videotaped deposition of Richard

4  Reimer, in the matter of Good Morning To

5  You Productions verses Warner Chappell

6  Music.  The deposition is being held at

7  1285 Avenue of Americas, New York, New

8  York on Friday, July 11, 2014 at

9  approximately 2:00 p.m.

10      Will the court reporter please

11  swear in the witness.

12  R I C H A R D    R E I M E R, called as a

13  witness, having been first duly sworn by a

14  Notary Public of the State of New York, was

15  examined and testified as follows:

16  EXAMINATION BY

17  MR. RIFKIND:

18      Q      Good morning afternoon,

19  Mr. Reimer.

20      A      Good afternoon.

21      Q      Are you currently employed as

22  Senior Vice President Legal Services for

23  ASCAP?

24      A      Correct.

25      Q      What is your job responsibility or

1   what are your job responsibilities?

2       A     I would characterize them at this

3   point, as being generally responsible for

4   litigation matters, as well as general advice

5   to any and all staff members of ASCAP.

6       Q     Have you worked for ASCAP as an

7   attorney since 1971?

8       A     That is correct.

9       Q     Do you by any chance know who

10  Bernie Korman was?  K-O-R-M-A-N.

11      A     Mr. Korman was a -- at one time

12  general counsel of ASCAP.

13      Q     He was.  Okay.  When was that?

14      A     I don't recall specifically when

15  he began his career at ASCAP.  I think it was

16  the early 50s.  My sense of when he was

17  general counsel was roughly from 1971 to

18  1993.

19      Q     Did you work with him?

20      A     Yes, I did.

21            (Whereupon, the aforementioned

22      Subpoena to testify was marked as Reimer

23      Exhibit 1 for identification as of this

24      date by the Reporter.)

25      Q     Okay.  Mr. Reimer, I'm going to

1    place before you a document the court

2    reporter has marked for identification as

3    Reimer 1.

4              This is a subpoena to testify at a

5    deposition in a civil case issued to ASCAP on

6    or about May 29, 2014.

7              Are you appearing here today to

8    testify pursuant to this subpoena?

9              MR. JOHNSON:  Let me just say for

10         the record, that you understand, I know

11         that we reached an agreement as to on

12         Mr. Reimer's appearance here today.  We

13         made certain modifications to the scope

14         of the subpoena, and the topics that

15         will be addressed today.  So subject to

16         that understanding Mr. Reimer is welcome

17         to answer.

18    A      The answer is yes.

19              (Whereupon, the aforementioned

20         Subpoena to produce documents was marked

21         as Reimer Exhibit 2 for identification

22         as of this date by the Reporter.)

23    Q      Thank you, Mr. Reimer.

24              Let me show you another document.

25    This one has been marked for identification

1    by the court reporter as Reimer 2.

2           This is a subpoena to produce

3    documents information or objects in the same

4    matter as the first subpoena.  This is also

5    addressed to ASCAP.

6           Did you produce approximately five

7    hundred pages or so of documents to the

8    plaintiffs pursuant to this subpoena Exhibit

9    Reimer 2?

10   A     Yes.  And copies also were given

11   to counsel for the defendants.

12   Q     And were you the person at ASCAP

13   who selected the five hundred or so pages of

14   document that were produced pursuant to this

15   subpoena that has been marked for

16   identification as Reimer 2?

17   A     Yes.

18          (Whereupon, the aforementioned

19          letter dated May 22, 2014 was marked as

20          Reimer Exhibit 3 for identification as

21          of this date by the Reporter.)

22   Q     Let me show you finally a document

23   that has been marked for identification by

24   the court reporter as Reimer 3.

25          Do you recognize this letter dated

Page 8

1   May 22, 2014, which you sent to me on that

2   date?

3        A     Yes.

4        Q     There are references to some

5   documents produced by ASCAP in that letter.

6   And I would like you to take a look now in

7   the first paragraph where those documents are

8   identified.  It says ASCAP 94 through ASCAP

9   and I think there a typographical error there

10  it should be 117, correct?

11       A     That's correct.

12       Q     If you have a pen why don't you

13  just make that change to the typographical

14  error in Exhibit Reimer 3.

15            So the documents that are

16  identified in Reimer Exhibit 3, did you

17  knowingly and intentionally produce those

18  documents to the plaintiffs pursuant to the

19  subpoena that we marked for identification as

20  Reimer 2?

21       A     If your question is when I

22  produced the documents, did I know I was

23  producing the documents, the answer is yes.

24       Q     Okay.  And you intended to produce

25  them, correct?

1      A      I'm not sure what you mean by

2  intended to produce them.  Certainly they

3  were produced pursuant to the subpoena.

4      Q      Okay.  Thank you.  Do I understand

5  correctly, that ASCAP grants blanket licenses

6  for public performances in a large body of

7  work?

8          MR. JOHNSON:  I think this is

9      beyond the scope of what the deposition

10      topics are agreed by scope of the

11      deposition.  If it's a necessary

12      question to get you to one of those

13      topics I understand.  It's not apparent

14      to me why it would be.

15          MR.RIFKIN:  Well, I think it's a

16      simple predicate question.  And it

17      certainly relates to the nature of the

18      services that ASCAP provides to

19      Warner/Chappell because Warner/Chappell

20      is one of ASCAP members.  It's a pretty

21      simple question.  It's likely to be a

22      yes or no answer.

23      Q      Does ASCAP provide grant blanket

24  licenses for public performances in a

25  collection of its member's works?

1      A      Let me answer it this way.

2   Certainly, ASCAP issues on behalf of its

3   members licenses for the right to perform

4   publicly the member's works.

5      Q      And ASCAP does not individually

6   license any member's work, correct?

7              MS. LeMOINE:  Objection to the

8         form.

9              MR. JOHNSON:  Again, I gave you

10        the latitude of one question without

11        having any sense that it was going

12        anywhere toward any of these topics.

13        You're now on a second question that's

14        outside the scope of the topics that we

15        agreed to and outside the scope of the

16        topics as they appear on the face of the

17        subpoena.

18              MR.RIFKIN:  Well, Mr. Johnson, I

19        don't want to take up a whole lot of

20        time on the record because we agreed to

21        try to do this deposition in a short

22        period of time but --

23              MR. JOHNSON:  The agreement is

24        based on the understanding that you were

25        going to stick to those topics subject

1    to the limitation that we discussed to

2    these topics.

3        MR.RIFKIN:  Well, I think this is

4    within the topics that are identified in

5    this subpoena.  If you are instructing

6    him not to answer a question, that's

7    great.  If not, let him answer the

8    question, let's move on.  I don't want

9    to tie up the record or our time with a

10   debate.

11       MR. JOHNSON:  I'm going to

12   instruct him not to answer it.

13       MR.RIFKIN:  Okay.

14       MR. JOHNSON:  If you want to

15   correct me as to why it is relevant to

16   one of these topics that falls within

17   one of these topics, I am open to

18   reconsidering that, but I just don't

19   see.

20       MR.RIFKIN:  It's item number six.

21       MR. JOHNSON:  That has nothing to

22   do with the licensing practices between

23   ASCAP and music users.

24       MR.RIFKIN:  I think it does, but

25   you instructed him not to answer.  We'll

Page 12

1       move on.

2       Q       Mr. Reimer, in the period from
3   1974 through 1979, did ASCAP provide services
4   to Summy-Birchard individually as opposed to
5   part of the services you provided to all of
6   your members in issuing blanket licenses?

7               MS. LeMOINE:  Objection to form.

8               MR. JOHNSON:  Objection.

9       A       I really don't know.

10      Q       What services did ASCAP provide to
11  Summy-Birchard in the period from 1974
12  through 1979?

13              MS. LeMOINE:  Objection to form.
14      Speculation.

15      A       Well, you know, apart from the
16  documents that we already produced I'm
17  unaware of any specific services.

18      Q       Okay, that's fine.

19              Does ASCAP have any interest in
20  the music it licenses?

21      A       Again, we produced documents that
22  I believe make clear whatever interest ASCAP
23  has.  I also said in my declaration that we
24  have no interest in the copyrights
25  themselves.

Page 13

1      Q     Do you have any interest in the

2   music?

3           MR. JOHNSON:  Objection.  That's

4      also beyond the scope of the topics

5      here.  Your topics about interest are

6      very specific.  Interest in any fees or

7      royalties interest in any copyrights.

8           MR.RIFKIN:  Okay.  Are you going

9      to instruct him not to answer?

10          MR. JOHNSON:  Well, are you

11     insisting -- are you continuing --

12          MR.RIFKIN:  I asked a question.  I

13     simply asked a question as a yes or no

14     answer.  If you want to instruct him not

15     to answer go ahead, if not, let him

16     answer and we can move on.

17          MR. JOHNSON:  First, I'm going to

18     object to the form of the question.

19     Second, I'm going to instruct him not to

20     answer.

21          MR.RIFKIN:  Okay, that's fine.

22     Q     Does ASCAP have any interest in

23  the copyright or any copyright to the song

24  Happy Birthday To You?

25     A     Again, I think my response is that

Page 14

1    the documents we produced speak for

2    themselves.

3         Q      Did ASCAP ever have any interest

4    in any copyright to the song Happy Birthday

5    To You?

6         A      I would make the same response I

7    just made.

8         Q      Can you answer that yes or no for

9    the record, please?

10        A      I will answer it by saying I think

11   the documents we produced are

12   self-explanatory.

13        Q      Do you know if any of those

14   documents identify any interest in the

15   copyright that ASCAP has the copyright to the

16   song Happy Birthday To You?

17             MS. LeMOINE:  Objection.  Vague.

18             MR. JOHNSON:  Objection.  This is

19        also -- he's already testified to this

20        in his declaration in this case.  You

21        know what the answer is.  So let's not

22        try to suggest on the record that he

23        hasn't already provided this information

24        to you.

25             MR.RIFKIN:  I simply want him to

Page 15

1      answer a yes or no question.  If he

2      refuses that's his prerogative.

3           MR. JOHNSON:  Why don't you put

4      his declaration in front of him where he

5      testifies about this, and ask him to

6      confirm that what he said is correct.

7      Q     Mr. Reimer, let's have the court

8  reporter mark for identification as Exhibit

9  Reimer 4.  A copy of the declaration you

10 submitted in this litigation.

11          (Whereupon, the aforementioned

12     Copy of Declaration was marked as Reimer

13     Exhibit 4 for identification as of this

14     date by the Reporter.)

15     Q     Mr. Reimer, do you recognize

16 Reimer Exhibit 4 as a copy of the declaration

17 you signed on June 6, 2014?

18     A     Yes.

19          MR. JOHNSON:  I will just note for

20     the record, this is a copy of the

21     declaration itself.  It doesn't include

22     the exhibits thereto.  I don't want the

23     suggestion this is the full and complete

24     copy.  I understand the purposes of what

25     you're using it for.  Please proceed.

1           MR.RIFKIN:   Thank you.

2      Q      You recognize your signature on

3 page 4 of Reimer 4?

4      A      Yes.

5      Q      And Mr. Reimer, are all of the

6 statements in the declaration true and

7 correct to the best of your knowledge?

8      A      They are.

9      Q      And they remain so today as much

10 as they were on June 6, 2014 when you signed

11 this declaration?

12      A      Correct.

13      Q      Let's turn to page 2, and look

14 very quickly at paragraph five.  I would like

15 to direct your attention to the last sentence

16 of that paragraph.

17           Do you see where it says, "ASCAP

18 does not have any ownership interest in any

19 of the musical works it licenses on behalf of

20 its members nor does it have any interest in

21 the fees or royalties it collects on behalf

22 of its members."  Have I read that correctly?

23      A      You have.

24      Q      Is that statement correct?

25      A      That statement is correct.

1    Q    Does ASCAP -- let me withdraw that

2  question.

3             In the 1970s, did ASCAP have any

4  ownership interest in the song Happy Birthday

5  To You?

6             MR. JOHNSON:  Objection.  This is

7        beyond the scope.  He's already told you

8        that he doesn't have any information

9        beyond what's already been provided to

10       you included what's in the declaration

11       you already put in front of him.  You're

12       now going beyond that, and trying to ask

13       about something else to revisit

14       territory we've already been over.

15            MR.RIFKIN:  Are you instructing

16       him not to answer the question?

17            MR. JOHNSON:  Why don't you

18       restate the question.  Let me then tell

19       you if I am or not.

20       Q    In the 1970s, did ASCAP have any

21  ownership interest in the song Happy Birthday

22  To You?

23            MR. JOHNSON:  Any ownership

24       interest in the copyright of the song?

25            MR.RIFKIN:  Well, actually, I am

1    trying to substitute the song Happy

2    Birthday To You in place of any of the

3    musical works.  In other words, I would

4    like to be specific about Happy Birthday

5    To You and paragraph five of

6    Mr. Reimer's declaration does not refer

7    to interest in the copyright.  It refers

8    to an ownership interest in the musical

9    works.  If you're drawing a distinction

10    between the two, Mr. Johnson, I'm simply

11    trying to follow your distinction.

12         Do you need me to repeat that

13    question?

14         MR. JOHNSON:  Why don't you repeat

15    it.

16    Q    Mr. Reimer, in 1970, did ASCAP

17    have any ownership interest in the song Happy

18    Birthday To You?

19    A    I don't know.

20    Q    In the 1970s, did ASCAP have any

21    ownership interest in any copyright to the

22    song Happy Birthday To You?

23    A    I don't know.

24    Q    In the 1970s, did ASCAP have any

25    interest in fees or royalties it collected

Page 19

1   for the song Happy Birthday To You, if it

2   collected any fees or royalties for that

3   song?

4       A    I don't know.

5       Q    Do you know whether ASCAP did, in

6   fact, collect any fees or royalties for the

7   song Happy Birthday To You in the 1970s?

8       A    I don't know.

9       Q    Has the law firm Coudert Brothers

10  ever represented ASCAP in connection with any

11  interest as ASCAP may or may not have had in

12  the song Happy Birthday To You?

13          MS. LeMOINE:  Objection.  Lacks

14      foundation.

15      A    I don't know.

16      Q    Has Coudert Brothers ever

17  represented ASCAP in connection with any

18  interest ASCAP may or may not have had in any

19  copyright to the song Happy Birthday To You?

20      A    I don't know.

21      Q    In the 1970s, did ASCAP license

22  individual works?

23          MR. JOHNSON:  This is I think the

24      same type of topic that you were getting

25      into before.  Goes beyond what's set

Page 20

1    forth in your subpoena.  Beyond what we

2    agreed to and narrowing the scope of

3    this deposition for today.

4        MR.RIFKIN:  Well, let me ask

5    specifically with respect to

6    Summy-Birchard.

7        Q    In the 1970s, did ASCAP license

8    any individual works for Summy-Birchard music

9    or Summy-Birchard company?

10       A    I don't know.

11       Q    Who sets the prices at which ASCAP

12   issues its blanket licenses?

13       MR. JOHNSON:  Can you just point

14   me where in the subpoena topics you

15   think that question --

16       MR.RIFKIN:  Yeah, I think again

17   number of six.  I think this relates to

18   the services ASCAP provides to Summy or

19   provided to Summy-Birchard or

20   Summy-Birchard Company, but if you would

21   like me to I could ask it specifically

22   with respect to that time period.

23       MR. JOHNSON:  I'm going to object.

24   Instruct him not to answer.

25       Q    Well, why don't I ask it this way:

1    Who set the prices at which ASCAP issued

2    blanket licenses during the period from 1974

3    through 1979?

4            MR. JOHNSON:  Same instruction.

5        It's beyond the scope of your subpoena.

6            MR.RIFKIN:  Are you instructing

7        him to not answer?

8            MR. JOHNSON:  Yes, I am.

9        Q    Did ASCAP have -- I'm sorry.  Let

10   me withdraw that and start all over.

11           Did Summy-Birchard have the right

12   to instruct ASCAP how much to charge for the

13   blanket licenses it issued during the period

14   from 1974 through 1979?

15           MR. JOHNSON:  Same instruction.

16       Q    Who determined -- in the period

17   from 1974 through 1979, who determined how

18   the money to ASCAP collected for the blanket

19   licenses would be distributed?

20           MR. JOHNSON:  Can you point me to

21       which topic you think this question is

22       responsive to.

23           MR.RIFKIN:  Yeah, it's six and

24       seven.  The distribution of -- we talked

25       about six is the services provided by

1    ASCAP, and seven asks about the

2    distribution of fees or royalties ASCAP

3    collects.

4        MR. JOHNSON:  My understanding is

5    that the fees and royalty issues in this

6    case have been severed, and are to be

7    dealt with at a later stage of the case.

8    It's beyond the scope of what the

9    relevant discovery is in this case at

10   this point in time.

11       MR.RIFKIN:  I think this question

12   is relevant to the issues that are

13   pertinent in the litigation, but if you

14   are going to instruct him not to answer

15   then please instruct him not answer, and

16   we'll move on.  Otherwise, I would like

17   him to answer the question.

18       MR. JOHNSON:  Just let me hear it

19   one more time.

20       MR.RIFKIN:  Sure.

21   Q    Who determined -- in the period

22   from 1947 through 1979, who determined how

23   the money ASCAP collected for the blanket

24   licenses it issued would be distributed?

25       MR. JOHNSON:  Just so I could

1    understand your question.  Do you mean

2    who within ASCAP, or do you mean did

3    ASCAP determine that as opposed to

4    someone other than ASCAP?

5         MR.RIFKIN:  The later.

6         MR. JOHNSON:  I'm okay with you

7    answering that.

8         THE WITNESS:  Now, repeat the

9    question, please.

10         MR. JOHNSON:  Maybe rephrase that

11    with that understanding built into it.

12    Q    During the period from 1974

13    through 1979, did ASCAP determine how the

14    fees or royalties if collected would be

15    distributed?

16    A    Yes.

17    Q    Did Summy-Birchard have the right

18    to direct ASCAP with respect to the

19    allocation of any fees or royalties ASCAP

20    collected in that period from 1974 through

21    1979?

22    A    I don't know.

23    Q    In the 1970s was ASCAP involved in

24    any common legal efforts with Summy-Birchard

25    concerning actual or anticipated litigation

1    over the song Happy Birthday To You?

2        A    I don't know.

3        Q    In the 1970s was ASCAP involved in

4    any common legal effort with Summy-Birchard

5    concerning actual or anticipated litigation

6    over any copyright to Happy Birthday To You?

7        A    I don't know.

8        Q    Are you aware whether ASCAP was

9    involved or knew about any actual or

10   anticipated litigation over the song Happy

11   Birthday To You in that period of 1970s?

12       A    Repeat the beginning of the

13   question --

14       Q    Sure.

15       A    -- please.

16       Q    Are you aware --

17       A    I have it.  The answer is no.

18       Q    Are you aware of any actual or

19   anticipated litigation over any copyright to

20   Happy Birthday To You that ASCAP knew about

21   in that period of the 1970s?

22       A    No.

23       Q    Did ASCAP or anyone at ASCAP

24   communicate with Coudert Brothers law firm in

25   the 1970s in furtherance of any common legal

Page 25

1    effort with Summy-Birchard concerning actual

2    or anticipated litigation over the song Happy

3    Birthday To You?

4            MS. LeMOINE:  Objection.

5        A    I don't know.

6        Q    Did ASCAP communicate with anyone

7    at the law firm Coudert Brothers in the 1970s

8    in furtherance of any common legal effort

9    with Summy-Birchard concerning actual or

10   anticipated litigation over any copyright to

11   the song Happy Birthday To You?

12       A    I don't know.

13       Q    In the 1970s, did ASCAP cooperate

14   with Summy-Birchard to formulate a common

15   legal strategy regarding the song Happy

16   Birthday To You?

17       A    I don't know.

18       Q    In the 1970s, did ASCAP corporate

19   with Summy-Birchard to formulate a common

20   legal strategy regarding any copyright to the

21   song Happy Birthday To You?

22       A    I don't know.

23       Q    Did ASCAP communicate in any

24   way -- I'm sorry.  Let me begin again.

25            Did ASCAP communicate in any way

1    with Coudert Brothers in the 1970s concerning

2    a common legal strategy with Summy-Birchard

3    regarding the song Happy Birthday To You?

4         A    I don't know.

5         Q    Or regarding any copyright to the

6    song Happy Birthday To You?

7         A    Again, I don't know.

8         Q    In 1976, if you can recall, was

9    ASCAP involved in any legal dispute

10   concerning the song Happy Birthday To You?

11        A    I think you should rephrase the

12   question.

13        Q    Are you able to recall any legal

14   dispute ASCAP was involved in concerning the

15   song Happy Birthday To You in the period

16   around 1976?

17        A    Your question implies that there

18   was such a litigation, and that I might or

19   might not recall it. I'm certainly unaware of

20   any such litigation.

21        Q    To the best of your knowledge,

22   there was no such litigation, correct?

23        A    I'm not aware of any.

24        Q    Okay fine.

25             In 1976 was ASCAP helping

Page 27

1   Summy-Birchard in any legal dispute

2   concerning the song Happy Birthday To You?

3        A      I don't know.

4        Q      Or the copyright to Happy Birthday

5   To You?

6        A      I don't know.

7        Q      Are you aware of any legal dispute

8   Summy-Birchard was involved in in that period

9   around 1976 concerning the song Happy

10  Birthday To You?

11       A      No.

12       Q      Or the copyright to Happy Birthday

13  To You?

14       A      No.

15       Q      Did anyone from ASCAP communicate

16  with the Coudert Brothers law firm in the

17  1970s regarding any legal interest ASCAP had

18  in Happy Birthday To You?

19       A      Well, again your question implies

20  that there was some interest, but I don't

21  know.

22       Q      Or in any copyright to Happy

23  Birthday To You?  In other words, did anyone

24  from ASCAP communicate with Coudert Brothers

25  in the 1970s regarding any legal interest

1   ASCAP had in the copyright to Happy Birthday

2   To You?

3        A    Again, the question implies that

4   ASCAP may have had some legal interest, but

5   I'm unaware of any communications.

6        Q    Did anyone from ASCAP communicate

7   to Coudert Brothers in the 1970s regarding

8   any legal interest Summy-Birchard had in the

9   song Happy Birthday To You?

10            MS. LeMOINE:  Objection.  Lacks

11       foundation at this point.

12       A    I don't know.

13       Q    Did anyone from ASCAP communicate

14   with Coudert Brothers in the 1970s regarding

15   any legal interest Summy-Birchard may have

16   had in any copyright to Happy Birthday To

17   You?

18            MS. LeMOINE:  Same objection.

19       A    I don't know.

20       Q    Are you aware of anyone from ASCAP

21   providing any information to Coudert Brothers

22   regarding Happy Birthday To You during that

23   time period of the 1970s?

24       A    No.

25       Q    Are you aware of ASCAP providing

Page 29

1    any information to Coudert Brothers in that

2    time period of the 1970s regarding Happy

3    Birthday To You to assist Summy-Birchard in

4    obtaining legal advice about the song?

5         A    No.

6         Q    Or about any copyright to the

7    song?

8         A    No.

9         Q    Did ASCAP receive any information

10   from Coudert Brothers in the 1970s regarding

11   Happy Birthday To You so that Summy-Birchard

12   could obtain legal advice about the song?

13             MS. LeMOINE:  Objection.  Calls

14        for speculation.

15             MR. JOHNSON:  Same objection.

16        A    Could you repeat the question?

17             MR.RIFKIN:  Sure.

18        Q    Did ASCAP receive any information

19   from Coudert Brothers in the 1970s regarding

20   the song Happy Birthday To You so that

21   Summy-Birchard could obtain legal advice?

22             MR. JOHNSON:  Why don't you break

23        the question down into two parts.  You

24        got too much built in to one question.

25             MR.RIFKIN:  Just suggest how you

1        would like me to split it up.

2              MR. JOHNSON:  The question clearly

3        has two parts.  Ask the first part and

4        then ask -- if you get a yes answer then

5        ask for what the purpose was.

6              MR.RIFKIN:  Okay.

7        Q     Did ASCAP receive any information

8    from the Coudert Brother law firm in the

9    1970s regarding the song Happy Birthday?

10       A     Well, I believe the documents we

11   produced to you indicated as such.

12       Q     Okay.  You are aware that you

13   produced a letter from Summy-Birchard, vice

14   president to Bernie Korman at ASCAP,

15   transmitting some communications from Coudert

16   Brothers, correct?

17       A     Correct.

18       Q     Did you, that is, did ASCAP

19   receive that information so that ASCAP could

20   obtain legal advice about the song Happy

21   Birthday To You?

22       A     I don't know.

23       Q     Did ASCAP receive that information

24   so that Summy-Birchard could obtain legal

25   advice about the song?

1     A      I don't know.

2     Q      What did you do to inform yourself

3   about the answer to either of those two

4   questions before your deposition today?

5     A      I don't think I've done anything.

6     Q      Did you look to see if there were

7   any files relating to any legal advice that

8   ASCAP was seeking about the song Happy

9   Birthday To You in the 1970s?

10    A      I think whatever documents we

11  produced would have responded to that

12  inquiry.

13    Q      Okay.  Did you look to see if

14  ASCAP had any files relating to any legal

15  advice that Summy-Birchard was seeking about

16  the song Happy Birthday To You that ASCAP was

17  asked to help with?

18          MS. LeMOINE:  Objection.  Lacks

19      foundation.

20    A      I think my last answer applies.

21    Q      Okay.  Did you find any

22  indications that ASCAP agreed with

23  Summy-Birchard that any communication from

24  Coudert Brothers in the 1970s concerning the

25  song Happy Birthday To You or the copyright

1    to the song would be subject to the

2    attorney/client privilege?

3              MR. JOHNSON:  Objection.  That's

4         outside the scope of the agreed topics

5         for today.

6              MR.RIFKIN:  I think that's exactly

7         item number five.

8              MR. JOHNSON:  The relationship

9         between the parties?

10             MR.RIFKIN:  Yes, sir.  Yes, sir.

11        But if you want to instruct him not to

12        answer.

13             MR. JOHNSON:  Maybe I misheard the

14        question.  Say it again.  I did not hear

15        it relating to five at all.

16             MR.RIFKIN:  Sure.

17        Q    Did you find any indication in any

18   documents you saw that ASCAP agreed with

19   Summy-Birchard that any communication ASCAP

20   received about the song Happy Birthday To You

21   or any copyright to the song from Coudert

22   Brothers would be subject to the

23   attorney/client privilege?

24             MR. JOHNSON:  If your position is

25        that's responsive to topic number five

Page 33

1    then I completely disagree with you.

2    I'm instructing him not to answer.

3        MS. LeMOINE:  Objection.

4    Q    In the period from 1974 through

5    1979, did ASCAP provide copyright or

6    trademark protection services to

7    Summy-Birchard?

8    A    I don't know.

9    Q    During that same period 1974

10   through 1979, did ASCAP help members to

11   acquire new music?

12       MS. LeMOINE:  Objection.  It's

13   vague.

14       MR. JOHNSON:  Objection.  Beyond

15   the scope of the agreed topics.

16       MR.RIFKIN:  I think it's item

17   number five.  I think it goes to the

18   relationship between or among

19   Summy-Birchard, ASCAP.  Obviously, this

20   doesn't relate to the Coudert Brothers,

21   but it certainly relates to the

22   relationship between Summy-Birchard and

23   ASCAP.  If you want to instruct him not

24   to answer, Mr. Johnson, please do so.

25   If not, let him answer question.

1    MR. JOHNSON:  Yeah, I'm going to

2    instruct him not to answer.

3    MR.RIFKIN:  Okay.

4    Q    During that same period from 1974

5    through 1979, did ASCAP help Summy-Birchard

6    register copyrights in new music?

7    A    I don't know.

8    Q    Does ASCAP presently help any of

9    its members register copyrights in new music?

10    MR. JOHNSON:  Same instruction.

11    Beyond the scope of the deposition.

12    MR.RIFKIN:  You're instructing him

13    not to answer?

14    MR. JOHNSON:  Correct.

15    Q    Does ASCAP currently help members

16    to acquire new music?

17    MR. JOHNSON:  I'm instructing him

18    not to answer.

19    Q    In the period 1974 through 1979,

20    did ASCAP provide copyright or trademark

21    protection services to Summy-Birchard?

22    MS. LeMOINE:  Objection.  Vague.

23    Objection to form.

24    MR. JOHNSON:  Yeah, can I hear the

25    question again?

1          MR.RIFKIN:  Sure.

2     Q     In the period from 1947 through

3 1979, did ASCAP provide copyright or

4 trademark protection services to

5 Summy-Birchard?

6          MR. JOHNSON:  Object to form.

7     A     I don't know.

8     Q     In that period from 1974 through

9 1979, did ASCAP provide quality control

10 services to Summy-Birchard?

11          MR. JOHNSON:  Objection to form.

12          MS. LeMOINE:  Objection.  Vague.

13     A     I don't know.

14     Q     During the period from 1974

15 through 1979, did ASCAP provide design

16 services to Summy-Birchard?

17          MR. JOHNSON:  Objection to form.

18          MS. LeMOINE:  Same objection.

19     A     I don't know.

20     Q     Does ASCAP provide quality control

21 services to any of its members today?

22          MR. JOHNSON:  I instruct him not

23     to answer.

24     Q     Does ASCAP provide design services

25 to any of its individual members today?

Page 36

1          MR. JOHNSON:  Instructing him not

2     to answer.

3          MR.RIFKIN:  Okay.

4     Q     In the period from 1974 through

5     1979, did ASCAP provide A and R services to

6     Summy-Birchard?

7          MR. JOHNSON:  Objection to form.

8     A     I don't know.

9     Q     Does ASCAP provide A and R

10    services to its individual members today?

11         MR. JOHNSON:  Instructing him not

12    to answer.

13    Q     Mr. Reimer, with respect to the

14    Coudert Brothers' letters that I asked you

15    some questions about earlier, you understand

16    that they were sent to ASCAP by

17    Summy-Birchard's vice president

18    Mrs. Sangstack, correct?

19         MS. LeMOINE:  Objection.  Calls

20    for speculation.

21    A     I know what the documents say on

22    their face.

23    Q     And you saw the transmittal letter

24    from Mrs. Sangstack to Mr. Korman in 1979,

25    correct?

1    A    Again I -- sorry.

2         MR. JOHNSON:  Objection to form.

3    A    Again, I know what the documents

4  say on their face.

5    Q    Other than what the documents say

6  on their face, do you know why Mrs. Sangstack

7  sent the letters from Coudert Brothers to

8  ASCAP?

9    A    No.

10   Q    I think you answered this

11 question, just so I'm sure we covered it.

12 Are you aware of any disputes regarding the

13 scope or validity of any copyright to the

14 song Happy Birthday To You?

15   A    You mean apart from this pending

16 lawsuit?

17   Q    Yes, sir.

18   A    No.

19        MR.RIFKIN:  At this time, I have

20        no further questions for you,

21        Mr. Reimer.  I appreciate your time.

22        There were some instances where you were

23        instructed not to answer questions

24        today.  I understand you intend to

25        follow your counsel instruction, but for

1        the record, let's make that clear.

2        Q     Will you answer any of those

3    questions over Mr. Johnson's instruction?

4        A     No.

5             MR.RIFKIN:  Okay.  I didn't expect

6        so.  You should be aware that we may

7        need to reconvene and have you answer

8        those questions if a court later rules

9        that you are required to answer those

10       questions.

11            THE WITNESS:  It's been my

12       experience that that's what happens.

13            MR.RIFKIN:  Thank you, again.

14       Nothing further at this time.

15            MS. LeMOINE:  Nothing from me.

16       Thank you.

17            (Continued on the next page.)

18

19

20

21

22

23

24

25

1           MR.RIFKIN:  Richard, thank you.

2           THE VIDEOGRAPHER:  That concludes

3      the video record for today.  The time is

4      2:39 p.m. we're now off the record.

5           (Whereupon, at 2:39 p.m., the

6      examination of this witness was

7      concluded.)

8           _____

       RICHARD REIMER

9

10  Subscribed and sworn to before me

11  this _____ day of _____, 20___.

12  _____

   NOTARY PUBLIC

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 40

1                 E X H I B I T S

2    REIMER          DESCRIPTION              PAGE
     EXHIBITS

3

4    Exhibit 1    Subpoena to                  5
                  testify

5

     Exhibit 2    Subpoena to                  6
6                 produce documents

7

     Exhibit 3    Letter dated May             7
8                 22, 2014

9

     Exhibit 4    Copy of                      15
10                Declaration

11

12                I N D E X

13   EXAMINATION BY                          PAGE

14   MR. RIFKIND                               4

15

16

17

18

19

20

21

22

23

24

25

Page 41

1                    C E R T I F I C A T E

2

3       STATE OF NEW YORK          )

                                    :  SS.:

4       COUNTY OF KINGS            )

5

6            I, GILBERT J. BOWLES, a Notary Public for

7       and within the State of New York, do hereby certify:

8            That the witness whose examination is

9       hereinbefore set forth was duly sworn and that such

10      examination is a true record of the testimony given

11      by that witness.

12           I further certify that I am not related to

13      any of the parties to this action by blood or by

14      marriage and that I am in no way interested in the

15      outcome of this matter.

16           IN WITNESS WHEREOF, I have hereunto set my

17      hand this 14th day of July, 2014.

18

19

20

                    _____

21                  GILBERT J. BOWLES

22

23

24

25

Page 42

1                          *** ERRATA SHEET ***
2      NAME OF CASE:  GOOD MORNING TO YOU
3      PRODUCTIONS V. WARNER/CHAPPELL MUSIC
4      DATE OF DEPOSITION:  7/11/14
5      DEPONENT:  Richard Reimer
6

         Page _____  Line _____  Reason _____
7        From _____ to

8        _____

         Page _____  Line _____  Reason _____
9        From _____ to

10       _____

         Page _____  Line _____  Reason _____
11       From _____ to

12       _____

         Page _____  Line _____  Reason _____
13       From _____ to

14       _____

         Page _____  Line _____  Reason _____
15       From _____ to

16       _____

         Page _____  Line _____  Reason _____
17       From _____ to

18       _____

         Page _____  Line _____  Reason _____
19       From _____ to

20       _____

         Page _____  Line _____  Reason _____
21       From _____ to

22       _____

                            _____
23                          Richard Reimer
24
25